ROGERS, Justice.
 

 This is a suit by Herbert Matthews against the First National Bank in Gibsland, which is in receivership, and John Paul Jones, its receiver, to set aside a sale to the bank of certain real estate situated in Bienville Parish. In the alternative, plaintiff seeks to hold John Paul Jones and E. W. Davis, individually, liable in damages. Judgment is asked against the bank, Jones, and Davis, in solido. Exceptions of no cause or right of action, filed by all the defendants, were maintained and plaintiff’s suit was dismissed. Plaintiff is appealing from the judgment.
 

 The petition shows that plaintiff was indebted to the First National Bank in Gibsland in the sum of $2000, with interest, attorney’s fees and costs, on a judgment obtained by the bank against plaintiff in the Second Judicial District Court of Bienville Parish. The petition further shows that John Paul Jones, in his capacity as receiver of the bank, submitted a proposition to plaintiff, under the terms of which plaintiff’s debt to the bank was to be compromised and liquidated; that the receiver proposed if plaintiff would raise, or cause to be raised, and would place, or cause to be placed, in his hands or custody $2000 in cash as a bona fide offer for the compromise settlement of plaintiff’s indebtedness to the bank, the receiver would submit the offer to the Comptroller of the Currency and would recommend its acceptance; that he had every reason to believe it would be approved and the settlement consummated; that plaintiff accepted the proposition and pursuant thereto delivered to the receiver an oil and gas lease on his land described in the petition, together with an act of sale conveying one-half of all the minerals under and that might be produced from the land; that the recited consideration in each assignment was $1000 cash; that as a matter of fact nothing was paid to plaintiff, nor did he receive any credit on his indebtedness; that although the transaction was handled by Jones, in his capacity as receiver, he caused the name of E. W. Davis to be be inserted in the instruments as lessee and vendee, respectively, and also caused the instruments to be recorded in the conveyance records of Bienville Parish; that Davis was a stranger to plaintiff, but that Jones told plaintiff he had the name of Davis inserted in the instruments as a matter of convenience, and that all dealings with plaintiff with reference to the lease and mineral sale would be conducted through the receiver; that at the time the lease and mineral sale were executed, Jones, the receiver, agreed that whenever plaintiff should produce a buyer willing to pay as much as $2000 for the lease and one-half of the minerals, the receiver would cause Davis to execute an assignment of the lease and a conveyance of one-half of the minerals, and that $2000 for the purchase price would be used to liquidate plaintiff’s indebtedness to the bank; that if Jones or Davis should produce a buyer for the lease
 
 *643
 
 and minerals before plaintiff, then that buyer would be accepted and $2000 of the purchase price would be similarly used to liquidate plaintiff’s indebtedness to the bank; that on the same day on which Jones caused the lease and the mineral sale to be recorded, he secured from Davis an assignment of the lease and a transfer of the minerals, in which instruments, however, the names of the lessee and vendee were left in blank, the apparent purpose of which was to enable Jones to exercise full control of the transaction; that pursuant to the understanding had with Jones, receiver, plaintiff found a buyer who was willing to pay $2100 for the lease and one-half interest in the minerals; that plaintiff presented the buyer to Jones, receiver, who, at the time, had in his possession and exhibited to the buyer the blank assignments of the lease and mineral sale; that the proposition of the buyer produced by plaintiff was favorably received by Jones, who agreed that the buyer should have until the following Monday to examine the title and consummate the transaction; that the following day the buyer visited Jones, who again expressed his approval of the transaction; that, accordingly, on the following Monday morning, plaintiff and the buyer presented themselves to Jones in his capacity as receiver of the bank for the purpose of paying the price .and completing the deal; that Jones then, communicated over long distance telephone with some person in the Town of Arcadia, and at the termination of the conversation, announced to plaintiff and his buyer that he had just talked to Davis and his attorney, and that the lease and one-half interest in the minerals had been sold to a buyer for a price for which a draft had been received by Davis or his attorney and therefore the offer of plaintiff’s buyer could not be accepted; that Jones’ announcement was satisfactory to plaintiff since he was assured that the receiver would obtain $2000 with which to extinguish plaintiff’s indebtedness to the bank; that subsequently plaintiff learned that the sale which Jones stated Davis had for the property never materialized; that the blank assignments of the lease and sale remained in the possession of Jones, receiver, until September 29, 1936, when plaintiff’s name was inserted in each instrument as assignee and vendee and the instruments were duly recorded in the conveyance records of Bienville Parish, all without plaintiff’s knowledge or consent; that since Jones, receiver, and Davis had secured and recorded the lease and deed to the minerals, and since they had refused to accept the offer of the buyer produced by plaintiff, the debt of plaintiff to the bank remained unpaid and he was unable to sell or lease the minerals to any other person; that if Jones, receiver, and Davis had not caused plaintiff’s lease and minerals to be placed beyond his control, he could and would have sold them for $2100 to the buyer he produced, and he could and would have placed in the hands of Jones, receiver, the amount of the purchase price as an offer to settle his indebtedness to the bank, and that the acceptance of the offer would have been recommended by Jones, receiver, and would have been approved by the Comptroller of the Currency; that at the time the buyer
 
 *645
 
 produced by plaintiff made his offer 1o purchase, the property was valuable because of the activity in oil and mineral properties prevailing in the vicinity, but this activity ceased shortly after the rejection of the offer of plaintiff’s buyer. Thereafter, no new offer of purchase could be obtained by any one; that if the offer of plaintiff’s buyer had been accepted, plaintiff’s debt would have been extinguished in full, and he would have had his land free of all encumbrances and would have still owned one-half of the minerals; that notwithstanding plaintiff had brought to Jones, receiver, a buyer who was able and willing to' purchase the lease and minerals for a sum more than sufficient to liquidate plaintiff’s indebtedness to the bank according to their agreement, Jones, receiver, caused the land belonging to plaintiff to be seized and sold in satisfaction of the bank’s judgment; that Jones, in his capacity as receiver of the bank, bought the property in at this sale in the name of the bank; that after payment of the costs, the balance of the purchase price amounting to $697.61 was credited on the judgment; that there was nothing that plaintiff could do to prevent the sale or to protect his rights; that in all ■ of these transactions Jones, receiver, was acting within the scope of his employment as well as within the scope of his authority as receiver; that the sale of plaintiff’s lands was in violation of his rights and could and would have been avoided if Jones and Davis had accepted the proposition of plaintiff’s buyer and sold the lease and minerals to him; that therefore plaintiff is entitled to have the sale set aside and the debt cancelled.
 

 In the -alternative, plaintiff alleged that if John Paul Jones was not acting within the scope of his employment and authority as receiver and as a consequence plaintiff is not entitled to have the sale of the property annulled, in that event John Paul Jones and E. W. Davis, individually, have damaged plaintiff to the extent of the value of his land, plus one-half of the value of the minerals, plus whatever balance may now be claimed by the bank in receivership, and they are therefore indebted in solido to plaintiff for said damages, which are set forth in the aggregate to be $5302.-39. Plaintiff’s prayer is in accordance with the allegations of his petition.
 

 Plaintiff nowhere in the petition alleges that under the direction’ or permission of the Comptroller of Currency and upon an order of a court of record. of competent jurisdiction, Jones, as receiver, was authorized to enter into the compromise agreement alleged by plaintiff. In the absence of such allegation, plaintiff’s petition fails to disclose any cause or right of action against either the receiver or the receivership. 12 U.S.C.A. § 192; 7 C.J., secs. 824, 825, pp. 843, 844. Nor do we think that plaintiff has alleged a cause or right of action against the defendant E. W. Davis. Plaintiff expressly alleges that all his dealings with reference to the mineral lease and mineral sales were had with Jones alone; that Davis was a stranger to him and was not present when the instruments were executed, and that his
 
 *647
 
 name was inserted therein by Jones. The alleged long-distance telephone conversation between Jones and Davis is purely heresay and not binding on Davis. There is no allegation in the petition that Davis committed any fraud or was guilty of any misrepresentation in connection with the transactions mentioned in the petition.
 

 So far as concerns John Paul Jones, individually, the petition presents a different situation. If, as alleged in the petition, Jones held himself out to plaintiff as authorized to bind the bank and the Comptroller of Currency in effecting the alleged compromise agreement with plaintiff when, as a matter of fact, he was not, and that by reason of such misrepresentation and by the further reason of the failure and refusal of Jones to accept the offer of the purchaser produced by plaintiff, he caused any loss to plaintiff, he should be held to respond in damages for such loss.
 

 For the reasons assigned, the judgment appealed from is annulled so far as it sustains the exception of no cause of action and dismisses plaintiff’s suit on his alternative claim against John Paul Jones, individually, and the case is remanded to the district court to be there reinstated on the docket for further proceedings against John Paul Jones, individually; in all other respects, the judgment is affirmed. John Paul Jones, individually, is to pay the cost of the present appeal; all other costs to await the final disposition of the suit.
 

 FOURNET, J., absent.